No. 22653.

People ex rel. Duke W. Dunbar, Attorney General of the State of Colorado *v.* Robert G. McIlhenny.

(437 P.2d 544)

Decided February 26, 1968.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, for complainant.

Irving P. Andrews, for respondent.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court.

This is a proceeding in discipline against respondent Robert G. McIlhenny, who was admitted to practice law in Colorado on March 12, 1951. The matter is now before

us following the filing of charges, a hearing and the "Report, Findings, Conclusions and Recommendation of Hearings Committee." The latter being a Committee composed of certain members of our Colorado Supreme Court Grievance Committee.

Respondent was originally charged, upon the complaints of Myrtle E. Jones and Dr. Edward J. Hors'ey, with two separate and distinct violations of the Canons of Ethics. We shall consider each complaint separately.

I.

In regard to the Jones charge, the evidence disclosed that respondent McIlhenny, his wife and W. R. Hadden, on February 1, 1963, incorporated a company known as Investors Mortgage, Inc. Some time prior to May 13, 1963, respondent drew an Agreement, which Hadden presented to Mrs. Jones, the complainant, and which she signed. This Agreement provided that Mrs. Jones, a 69 year old widow, would loan Investors Mortgage, Inc. the sum of $34,446.00, which she did and which sum was deposited in the corporation's bank accounts. (The loan from Mrs. Jones consisted of her entire life savings.) It appears that no other person at any time invested any money in that corporation. Hadden later released all his interest in the company to the respondent who became the sole stockholder and president.

The contract with Mrs. Jones provided that Investors Mortgage would pay her interest of 1% per month with the entire principal due 90 days after notice, at any time after the expiration of one year from the date of the Agreement. Interest payments were made for one year and then a default occurred for the month of July 1964. On August 4, 1964, Mrs. Jones gave her notice of termination and demanded her principal balance of $34,446.00. The notice was received August 5, 1964. On September 9, 1964, she commenced a civil action to recover her money. This action was settled by a stipulated agreement and judgment; the latter in Mrs. Jones' favor in the amount of $36,247.24. Thereafter, a small sum of

cash and various secured and unsecured promissory notes of third persons payable to the company were transferred to the complainant in partial satisfaction of the judgment.

The charge of wrongdoing against respondent as to Mrs. Jones arises out of the fact that the initial Agreement with respondent's company limited the use of her funds to "loans secured by First or Second Deeds of Trust upon real property" and that McIlhenny made many loans not so secured — all to her great loss and damage. The evidence was that the complainant will sustain a loss of $29,506.22 as a result of McIlhenny's breach of trust.

The Committee found that the respondent admitted that loans were made as charged and that the corporate Agreement was breached, but denied that there was anything improper about the transactions. Among the types of loans made were unsecured loans to the owner of a "bottle club" purportedly to protect the owner from some personal liability; to a corporation respondent set up with others and in which he was an officer and the majority stockholder; and to law clients and friends. In addition, respondent withdrew substantial sums from the corporation for his personal use, and to pay his wife a salary; also he paid excessive sums for the services of one Peter L. Filosa; and, while acting as the collection agent on a note, failed to collect the monthly sums due, yet he paid monthly amounts to the noteholder out of the corporate assets.

McIlhenny acknowledged that he had drawn the Agreement with Mrs. Jones while acting as the attorney for Hadden and that he knew she was an investor. When asked whether his subsequent course of conduct in handling these funds was not contrary to the highest standards of honesty, justice and morality, his answer was "no." He also at one time during the proceedings testified that he did not feel he owed Mrs. Jones any particular fiduciary obligation and considered her only

a corporate creditor although he also agreed that as a corporate officer he had the duty to carry out the loan agreement.

## II.

Concerning the complaint of Dr. Horsley, the record shows that respondent represented one Bernardine Garcia in a tort action and that he had Dr. Horsley examine his client. Later McIlhenny settled the Garcia claim. In the settlement he received the sum of $110.00 for the medical examiner which amount he failed to remit. The respondent confirmed that he had withheld this sum, although he had promised payment thereof to the doctor after many requests. Nevertheless, he refused and continued to refuse to pay the sum to Dr. Horsley up to the time of the hearing. The record also discloses that a payment to another doctor in connection with this matter was only made by the respondent after considerable delay and dunning. McIlhenny acknowledged during the Committee hearing that he realized his client was liable to a suit for the bill he refused to pay with the money he held and which belonged to her.

## III.

Our Committee found, in recited particulars as to the Jones complaint, that respondent was in flagrant violation of the loan Agreement and that in many instances even where collateral had been secured on loans, such was worthless. Also, "that the Respondent used this corporation and the funds of Mrs. Jones as a vehicle for his own use and enrichment" and that his actions were carried out even though "this impaired the capital structure of the corporation." Other conduct of the respondent in this matter was characterized as demonstrating "a complete lack of responsibility." Still other testimony of McIlhenny relating to what he claimed were corporate expenses, and which the Committee found were his personal expenses, was labeled as "fa'se" by the Committee.

As to the failure to transmit Mrs. Garcia's money to Dr. Horsley, the Committee found it not to be an oversight but that he had converted her money to his own use.

The conclusion of the Committee was that respondent was "guilty of acts contrary to the highest standards of honesty, justice and morality" and it recommended his disbarment.

█ To all of the above the respondent filed his Exceptions. We have reviewed that document and find that the objections made relate to attempts to dispute various matters concerning unessential evidence to the principal charges of unethical behavior. Exception is also taken to the Committee's labeling the withholding of Dr. Horsley's payment as "embezzlement." Nowhere does the respondent seem to recognize that as a member of the bar he has a duty to have conducted his business and legal affairs honestly, fairly and with candor. And we observe that some of this record reveals that many of the transactions in question were conducted by McIlhenny as a lawyer.

█ The Committee's Findings, which are amply supported by the record, show a callous lack of scruples and sense of fairness in this respondent which cannot be condoned by this court. His conduct and actions have brought financial ruin to an innocent, aged widow without any apparent understanding of his responsibility as a lawyer, a corporate officer or a businessman. His attitude, neglect and conduct in withholding the Garcia money from Dr. Horsley was wrongful and dishonest. Respondent has brought disrespect on both himself and the bar of this state. His conduct has indeed been contrary to the high standards of morality, honesty and justice required of a licensed attorney.

It is the order of this court that the respondent, Glenn Robert McIlhenny, also known as Robert G. McIlhenny, is forthwith disbarred as an attorney. Costs incurred in this action in the amount of $269.80 shall be paid by

respondent to the clerk of this court within sixty days hereafter.